United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 5, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-41181

In the Matter of: EN RE, LP

Debtor

BENGAL ENERGY LP,

Appellant,

versus

EN RE, LP; FOREST OIL CORP.,

Appellees.

Appeal from the United States District Court for
the Southern District of Texas
(USDC No. 2:04-CV-557)

Before REAVLEY, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Bengal Energy, L.P. ("Bengal"), a successor to the purchaser of oil and gas lease

interests from bankruptcy debtor En Re, L.P. ("EnRe"), under a confirmed Chapter 11

plan, appeals the district court's affirmance of the bankruptcy court's post-sale charge of

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

price adjustments.  We affirm in part and reverse in part, for the following reasons:

1.    Because the essence of Bengal's motion underlying this appeal is that the bankruptcy court made a determination affecting its interests based on an agreement between EnRe and Forest Oil Corp. ("Forest") to which Bengal was not a party and did not consent, we treat Bengal's motion as one to alter or amend judgment under Federal Rule of Civil Procedure 59(e). Generally, this Court reviews the denial of a motion to reconsider for abuse of discretion.  Fletcher v. Apfel, 210 F.3d 510, 512 (5th Cir. 2000). However, if a party appeals from the denial of a Rule 59(e) motion that is solely a motion to reconsider a judgment on its merits, de novo review is appropriate.  Id.  Considering Bengal's arguments on appeal, it is apparent that it intended to appeal the merits of the underlying "agreed" order; accordingly, we review its claims regarding propriety of that order de novo.  See Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 749 (5th Cir. 2006).

2.    We find no fault with the bankruptcy court's permitting Forest a reduction in the amount of $139,319.58 as a post-closing expense adjustment from Forest's obligation to carry certain drilling costs for the Wharton County leases, such obligation and setoff right having been established under the order approving the EnRe-to-Forest Purchase and Sale Agreement  (the "PSA") and Bengal having succeeded to its interest in the carry through

2

plan acquisition of part of the lease assets initially retained by EnRe under the PSA. The total carry was defined by the interlineated order approving the PSA, not as an amount certain, but as a carry in the amount of $2,000,000 subject to reduction based upon post-closing expense adjustment in the approximate amount of $100,000 — that reduction amount eventually being liquidated in the exact amount of $139,319.58. We thus agree with Forest that the reduction of the post-closing adjustments from the carry is not a lien, claim or encumbrance that can be stripped, as Bengal suggests, but instead is part and parcel of the carry itself. Bengal's entitlement to a portion of that carry was subject to proportional adjustment for the post-closing expenses.

3. The delay rentals in question, in the amount of $119,045.76, were related to the Go-Man-Go Prospect Leases, a subset of the Wharton County Lease interests initially contracted for in the EnRe-to-Forest PSA but excised from that agreement prior to closing. The facts provide no support for assessing such costs against Bengal. Forest paid the delay rentals to EnRe as a defined "Seller's Credit" (an upward adjustment in the PSA purchase price) but eventually wanted a refund since EnRe could not obtain and deliver the Go-Man-Go leases to Forest in accordance with the PSA. Thus, the Go-Man-Go leases were neither sold to Forest nor retained by EnRe under the PSA and were not therefore transferred to Bengal and others under the J-W

3

Plan with the other Wharton County assets. The agreement between Forest and EnRe, which resulted in the agreed order underlying this appeal, attempted to saddle Bengal with costs associated with assets it did not hold. To the extent that Forest was owed reimbursement of the delay rentals, it was owed by EnRe, not Bengal.

4. It was known at the time of the approval hearing for the PSA and the interlineation of the asset sale order to Forest that the post-closing adjustments to be reduced from the carry were going to be approximately $100,000 (that amount eventually being liquidated at $139,319.85). It was also known at the time of the hearing and interlineation of the order that the Go-Man-Go delay rentals, regardless of which entity was ultimately held responsible for them, were exactly $119,045.76. The latter was clearly not a subset of the former because the court and the parties could not have intended to include a charge they knew to be over $119,000 in a category of post-closing adjustments described as "in the approximate amount of $100,000."

Prior to the execution of the J-W Plan and transfer of EnRe's retained interests in the Wharton County leases to Bengal, nothing in the record indicates that EnRe and Forest contemplated offsetting the disputed Go-Man-Go delay rentals as a reduction in the carry under the PSA. However, later, by the agreed order, the bankruptcy court charged the carry

4

for the full sum of both the liquidated post-closing adjustments ($139,319.58) and the Go-Man-Go delay rentals ($119,045.76), for a total of $258,365.34.

5.      The determination that Forest was permitted a reduction in the amount of $139,319.58 as a post-closing expense adjustment to the carry is affirmed. The determination that Forest was permitted a reduction in the amount of $119,045.76 as a post-closing expense adjustment to the carry for the Go-Man-Go delay rentals is reversed.

AFFIRMED IN PART, REVERSED IN PART.  CAUSE REMANDED.